WILLIAM M. SCOTT, RESPONDENT, v. JAMES H. ELMORE, JR., AN INFANT, APPELLANT, IMPLEADED WITH OTHERS.

*Supplementary proceedings — order appointing receiver in — title to real estate, not passed by recording of.*

On November 27, 1874, a judgment was recovered against the defendant Elmore, who was in possession of and entitled to a life estate in certain real property. Execution having been issued upon said judgment and returned unsatisfied, supplementary proceedings were instituted, in which, on June 25, 1875, a receiver of the property of the said Elmore was duly appointed by an order which was duly recorded. July 1, 1875, the receiver conveyed all the right, title and interest of Elmore in the said real estate to the plaintiff. Elmore never made any conveyance to the receiver, nor was any order ever made by the court requiring him so to do, or directing a sale by the receiver.

*Held,* that the receiver was not vested, by virtue of his appointment, with any title to the real estate owned by the judgment debtor, nor did the plaintiff acquire any interest therein by virtue of the conveyance from him.

*Bank* v. *Risly* (19 N. Y., 375) and *Moak* v. *Coats* (33 Barb., 498) followed.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

The action was for partition of real property, the plaintiff claiming an interest therein, under a deed executed by a receiver, in proceedings supplementary to execution, of a judgment debtor having a life estate in said property.

The order appointing the receiver was duly recorded in the proper clerk's office.

*Robert S. Green,* for the guardian *ad litem,* appellant.

*Edward S. Clinch,* for the respondent.

DYKMAN, J.:

The object of this action is to procure the partition or sale of certain real property in the county of Queens. The original source of title to the premises was Annette C. Elmore. She died seized in fee of the premises, and intestate, in October, 1872, leaving her surviving, her husband James H. Elmore, and two children Charles Elmore and James H. Elmore, Jr. Charles has since died intestate and without issue. On the 21st day of January, 1875, William Bunting was appointed the receiver of the property of James H. Elmore, in proceeding supplementary to execution, by the county judge of Queens county, and on the 1st day of July, 1875, he made, executed and delivered to the plaintiff a deed of conveyance of all the right, title and interest of James H. Elmore in the premises in question. James H. Elmore, the judgment debtor, never made any conveyance to the receiver. On the 3d day of August, 1875, the plaintiff, with his wife, made, executed and delivered to George Deerland a deed of conveyance for the equal, undivided one-half of the premises in question. It will thus be seen that at the death of Annette C. Elmore her husband became entitled to a life estate in the premises, or tenant by the curtesy, and that the remainder descended to her two sons; as Charles has since died his half of the remainder vests in his brother. The plaintiff, at the time of the commencement of this action, was in the possession of premises, and he claims that, by the deed of conveyance from the receiver, he became the owner of the life estate of James H. Elmore, and that, as he has conveyed the one-half of this estate to George Deerland, who is out of possession, he can now maintain this action for partition because he now holds his life estate in common with Deerland, who is made a party defendant.

It is first important to determine the legal effect of the deed of conveyance from the receiver to the plaintiff. On the 27th day of November, 1874, a judgment was docketed, in the county of Queens, for a large amount in favor of Aaron A. Degrauw against James H. Elmore, who was then residing on these premises, and of course

this judgment became a lien on his estate therein. An execution was issued on this judgment against the property of the defendant, and his life estate could have been sold under that execution; but it was not, and the execution was returned unsatisfied; and then the proceedings supplementary to execution were instituted, which resulted in the appointment of the receiver, as has been stated. There were three other judgments against James H. Elmore, which were liens on this same land to the same extent as that of the plaintiff, but they were all prior to his; whether or not they have been satisfied the case does not disclose.

If the interest of James H. Elmore in this land had been sold under the execution on the plaintiff's judgment, the sale would not have become absolute until the expiration of fifteen months. The judgment debtor and her heir and grantees had twelve months in which to redeem, and then the other judgment creditors and mortgagees had three months longer, in which they might acquire the interest of the purchaser at such sale. Now, this right to redeem and take the situation of the purchaser at a sheriff's sale is a legal right which is given to a junior judgment debtor by our statute, and of which he cannot be deprived by any act, either of the debtor or of a prior judgment creditor.

If, instead of a sale of land under an execution against property, a judgment debtor can procure the appointment of a receiver in supplementary proceedings, and take from him a conveyance of the real estate of the judgment debtor, and thus vest himself with the absolute title, free from the right of redemption, then the whole of that nicely adjusted policy of our statute in relation to sale of real property to enforce the payment of judgments, is subverted and swept aside. Let it be borne in mind that there never has been any order of the court directing any conveyance or assignment from the judgment debtor to the receiver, nor directing any sale or conveyance by the receiver. Proceedings supplementary to execution are analogous to the commencement of an equitable action in the nature of the old-fashioned creditors' bill; and its only object, so far as it relates to land, is to clear away some fraudulent obstruction to the ordinary and legal remedy by execution. It is true that the Court of Chancery had the power, and exercised it, to compel the debtor to make an assignment of his property to the receiver (*Chipman*

v. *Sabbator*, 7 Paige, 47); and when this was done the receiver became the trustee, and discharged his duties under the direction of the court. This remedy still exists. The Supreme Court has now the same power as the old Court of Chancery in this respect, and, where a creditor elects to pursue it, he may, but he cannot be compelled to do so. In this case the plaintiff has not pursued this remedy, and it is no part of the legitimate office of a creditor's suit. That office is performed when the obstruction to the legal remedy by execution is swept aside. In this case there was no such obstruction. The lien of the plaintiff's judgment had attached to the interest in the land, of his judgment debtor, and the title still remained in him. There was no office to be performed by the subsequent proceeding, unless the plaintiff went further and obtained an assignment from his judgment debtor to the receiver under and in pursuance of the order of the court. The judgment debtor was in possession of land in which he had a legal estate, and we do not think that a receiver ought to be appointed in such a case; and, if one is appointed, we do not think he takes an interest in the land of the judgment debtor, which empowers him to convey any title to it at all. To hold otherwise would be to decide substantially that the court can cut off the right of a junior judgment creditor to redeem, by the appointment of a receiver in any case, whereas, " if his judgment has been recorded before other creditors have instituted proceedings in equity, nothing in the course or in the result of those proceedings can affect his right." (*Bank* v. *Risley*, 19 N. Y., 375.)

It seems to be settled that, before the Code, a receiver took no title to real property by the mere order of the court, without any conveyance from the judgment debtor in whom the legal title was vested. (*Wilson* v. *Wilson*, 1 Barb. Ch., 592; *Porter* v. *Williams*, 5 Selden, 142.) Whether, under the provision of section 298 of the Code, a receiver takes title to real property by the mere order of the court appointing him, has been much discussed in several cases in the Court of Appeals, but the judges have differed in their views. In the case of *Porter* v. *Williams* (*supra*), Justice WILLARD expressed the opinion, that by the Code real and personal property are placed on the same footing in this respect, and that no assignment is necessary to vest the legal estate to either. This, however, is but the mere expression of his own opinion and is of no binding force, as

the question was not involved in the case. The most satisfactory case is that of the *Chautauqua County Bank* v. *Risley*, above quoted. In that case Judge COMSTOCK discussed the question respecting the power of the receiver to make a sale under a judgment of the court, that would cut off the right of the debtor to redeem, with great ability and great thoroughness, and came to the conclusion that he had no such power without an assignment from the judgment debtor, and in the course of the discussion he says: "The personal estate became vested in the receiver from the time and by virtue of his appointment, the real estate only by virtue of a conveyance to him, which the court has power to compel."

In *Moak* v. *Coats* (33 Barb., 498), proceedings supplementary to execution were instituted against Catharine Coats, and the plaintiff was appointed receiver therein, when she was the owner of a dower right as the widow of her husband, then deceased; after the plaintiff's appointment the widow joined with the heirs in a conveyance of the land. After that the plaintiff, as such receiver, procured her dower to be admeasured and set off, and then brought an action of ejectment, claiming to be the owner of the lands so set off by virtue of his appointment as such receiver. No assignment had been executed to the receiver. This case then presented the same question now under consideration, and the court held that the action could not be maintained against the purchaser. The opinion, which was unanimously concurred in by all the members of the court, adopted the views of Judge COMSTOCK, above quoted, and commands our respect by the force of its reasoning. We fully concur in the opinion and in the result arrived at.

Personal property is usually held by mere possession without any other evidence of title, and may be passed from hand to hand in the same way, and it is well enough to allow the title to that kind of property to vest in a receiver without any assignment, because he can take actual possession of it and dispose of it for the purposes of the trust; but real property is held by a very different tenure, and it is important that there should be some muniment of the title, and some evidence of its transmission from one to another. We put our decision on the ground that the receiver took no title to the premises which he assumed to convey to the plaintiff, and that the plaintiff acquired no interest in the same by the conveyance from

the receiver, and has no interest that will enable him to maintain this action.

The judgment must be reversed, with costs.

Present — GILBERT and DYKMAN, JJ. BARNARD, P. J., not sitting.

Judgment reversed and new trial granted, costs to abide event.